```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

BROWNELL LAND CO., L.L.C.                  CIVIL ACTION

VERSUS                                     NO: 05-225

OXY USA INC., ET AL.                       SECTION: "J" (5)
```

**ORDER AND REASONS**

Before the Court is Defendant's Motion in Limine to Exclude Testimony and Evidence Regarding the Need for, Extent and Cost of Plaintiff's Proposed Remediation Plan (Rec. Doc. 54). This Court already denied the motion in an order issued on October 5, 2007 (Rec. Doc. 117). This document reaffirms the Court's previous ruling and sets forth its reasons below.

**BACKGROUND**

The facts pertaining to this motion are not materially different from the facts in any of the previous motions filed by this Court in this case.

**DISCUSSION**

On June 8, 2006, Governor Blanco signed Senate Bill 655, enacting Act 312 of the 2006 Regular Session ("Act 312") which sets forth requirements for pursuing claims for environmental

damages caused by oilfield operations.  Act 312 was codified at La. Rev. Stat. Ann. § 30:29.

The legislative purpose in passing this Act has its roots in the Louisiana Supreme Court decision in *Corbello v. Iowa Prod.*, 850 So. 2d 686 (La. 2003).  In that case, the Supreme Court held that in a claim for breach of a contractual obligation to restore property, damages need not be tethered to the value of the property.  Additionally, under then-existing law, a landowner who collected damages was not required to actually remediate the land in question. Therefore, it appeared that the result of *Corbello* was "a perception that contaminated property was the equivalent of a winning lottery ticket for the landowner." Loulan Pitre, Jr., *"Legacy Litigation" and Act 312 of 2006*, 20 Tul. Envtl. L.J. 347, 348 (2007).  The Louisiana Legislature responded by enacting La. Rev. Stat. Ann. § 30:2015.1 which required plaintiffs to notify the Louisiana Department of Natural Resources ("DNR") and the Louisiana Department of Environmental Quality ("DEQ") of lawsuits that arose under the statute's ambit.[1] DNR and DEQ were afforded the right to intervene.  Additionally, when contamination of ground water is established the statute requires the responsible party to formulate a remediation plan and deposit funds into the

---

[1] The statute only applied to actions that implicated contamination of ground water.  This limitation was a compromise to allow the bill to be passed.  *See* Pitre, *supra*, at 349.

registry of the court to fund the actual implementation of the remediation. LA. REV. STAT. ANN. § 30:2015.1; Pitre, *supra*, at 349.

Even though the effect of section 2015.1 was "significant," many in the state including the Governor felt that additional legislation was needed, and therefore the Governor announced that "reform of legacy litigation[2] would be a part of her legislative package" in 2006. Pitre, *supra*, at 350. Accordingly, the Legislature considered and passed Act 312 which went into effect on June 8, 2006.

Under the Act, once a party is deemed to be liable for environmental damage, that party is required to submit a remediation plan to DNR. The plaintiff is permitted to file a response to the plan and is free to file its own plan as well. LA. REV. STAT. ANN. § 30:29(C)(1). DNR is then directed to hold public hearings on the plans, and determine what plan would be the most feasible. § 29(C)(2). The plan approved by DNR is then submitted to the Court, who is directed to adopt the plan unless it is shown by a preponderance of the evidence that another plan

---

[2] Cases in which landowners seek damages from oil and gas exploration are sometimes known as "legacy litigation" because they often arise from operations conducted many decades ago. Pitre, *supra*, at 348; *see also* John P. Manard, Jr., et al., *Katrina's Tort Litigation: An Imperfect Storm*, NAT. RESOURCES & ENV'T, Spring 2006, at 31, 36.

3

is a more feasible one to adequately protect the public.  § 29(C)(4)-(5).  The statute provides provisions that the funds for remediation are to be paid into the registry of the Court.  § 29(D).  The statute also provides provisions for a plaintiff to recover attorney's fees and costs.  § 29(E)-(F).  The statute specifically provides that its purpose is to provide evaluation and remediation of environmental damage.  § 29(G).  Finally, the statute provides that it does not preclude "an owner of land from pursuing a judicial remedy or receiving a judicial award for private claims suffered as a result of environmental damage . . . . Nor shall it preclude a judgment ordering damages for or implementation of additional remediation in excess of the requirements of the plan adopted by the court pursuant to this Section as may required in accordance with the terms of an express contractual provision.  Any award granted in connection with the judgment for additional remediation is not required to paid into the registry of the court."  § 29(H).

The Defendant claims that as a procedural matter, the Court must determine, first that there is environmental damage and that Defendant is the cause of the damage.  Thereafter the court may consider a plan as developed by the parties and DNR.  Plaintiff counters that defendant's position is incorrect and has been rejected by Louisiana courts.

As a preliminary matter, it is noteworthy that Act 312 became effective on June 8, 2006, while this lawsuit was filed on October 26, 2004.  LA. CIV. CODE ANN. art. 6 provides that: "In the absence of contrary legislative expression, substantive laws apply prospectively only.  Procedural and interpretative laws apply both prospectively and retroactively unless there is a legislative expression to the contrary."  The Act is clearly a procedural law.  "It is the duty of the legislature to set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest.  To this end, this Section provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the [DNR]."  LA. REV. STAT. ANN. § 30:29(A).  Accordingly, the law applies retroactively to lawsuits already filed at the time of its enactment.  However, the Act specifically exempted lawsuits where a case had been set for trial on or before March 27, 2006.  2006 La. Acts 312 § 3.  This case did not have its trial date set until March 14, 2007.  Therefore the statute's provisions would apply.

To determine Louisiana law, this Court must look to a final decision of the Louisiana Supreme Court.  *Am. Int'l Specialty Lines Ins.Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).  When the Supreme Court has not made a final decision on

an issue, the federal court must make an *Erie*-guess and determine how that court would resolve the issue if presented with it. Such a guess requires that the federal court employ the "appropriate Louisiana civilian methodology to decide the issues presented." *Id.*; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). In Louisiana, sources of law are "legislation and custom." LA. CIV. CODE ANN. art. 1. "Jurisprudence, when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana." *Katrina Canal Breaches*, 495 F.3d at 206 (*citing Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999)). The Fifth Circuit has noted it will not disregard the decisions of a Louisiana intermediate court unless it is convinced that the Louisiana Supreme Court would decide to the contrary. However the court notes that a federal court is not strictly bound by the intermediate courts' decisions. *Katrina Canal Breaches*, 495 F.3d at 206.

The Louisiana Civil Code provides guidance on how to interpret the state's laws. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislation." LA. CIV. CODE ANN. art. 9. However, "When the language of the law is

susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." LA. CIV. CODE ANN. art. 10.  Therefore the Court must first determine if the meaning of the statute is ambiguous.  Ambiguity is defined as "uncertainty of meaning"  BLACK'S LAW DICTIONARY 79 (7th ed. 1999).

The statute can be read in two ways.  The first is defendant's reading, that there is to be a trial on liability and only after the trial on liability can there be a trial on damages.  This is supported by the process that the statute gives for the formulation of a remediation plan.  The statute provides that "if at any time during the proceeding a party admits liability . . . or the finder of fact determines that environmental damage exists and determines the party . . . who caused the damage, the court shall order the party . . . to develop a plan or submittal for the evaluation or remediation." LA. REV. STAT. ANN. § 30:29(C)(1).  The Defendant claims that the Court must determine liability, and only then can a remediation plan be presented.  And at that time, the court can determine the feasibility of the remediation plans.

The plaintiff disagrees with this interpretation, and asserts that defendant's reading of the statute has been rejected by Louisiana courts.  Plaintiff relies on *Duplantier Family*

7

*P'ship v. BP Amoco*, 07-293 (La. App. 4 Cir. 5/16/07).[3]  In *Duplantier*, the Louisiana Fourth Circuit Court of Appeal rejected a defense motion to bifurcate a trial based on the Act.  The court held that there should be one trial on all claims and issues, after which the parties would submit their plans for remediation to DNR.  The Court noted that the legislative history of the statute indicates that it "was intended to insure the funds awarded by the courts for damages to property would actually be used to remediate the property."  The court continued that because the Supreme Court of Louisiana has not limited a landowner's right to recover for damages in environmental contamination cases to restoration damages and has specifically allowed for additional damages, that all claims, both tort and contractual should be considered at the same time in order to determine the full extent of damages owed to the property owner.  *Id.* (*citing Corbello*, 850 So. 2d at 694-95).  The court continued that the Louisiana Code of Civil Procedure only allows bifurcated

---

[3]Plaintiff comments that even though *Duplantier* has not been selected for publication, it still has the force of precedent. Plaintiff cites LA. CODE CIV. PROC. ANN. art. 2168 in support of this proposition.  Plaintiff is certainly correct that article 2168 permits the citation of unpublished cases, and even indicates that such citations should receive the same weight of authority as unpublished cases.  However, the article cannot stand for the proposition that the case is "precedent," in the sense that the case is not necessarily controlling on this court or any other court for that matter.  *See* LA. CIV. CODE ANN. art. 1; *see also* discussion of *jurisprudence constante, supra.*

trials with the consent of both parties.  *Id.* (*citing* LA. CODE CIV. PROC. ANN. arts. 1562, 1736).  The court finally notes that a single trial is more efficient, and the defense concerns that the jury will be confused can be alleviated by jury instructions.

The Fourth Circuit opinion admits that the statute is susceptible to two interpretations, and therefore the search into the legislature's intent is appropriate.  The Fourth Circuit's reasoning is the same as the reasoning espoused by Pitre.  Under the Fourth Circuit's reasoning, a jury will determine liability, and will also determine the appropriate damages award.  Afterwards, the DNR will come up with a remediation plan.

Plaintiff has suggested that if the DNR is the one that decides what the remediation plan should be, then this Court must abstain from exercising jurisdiction under the doctrine laid out in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  In that case, the Supreme Court held that where a Texas statute provided a unified method for formation of policy regarding an important state industry, a federal equity court should refuse jurisdiction in deference to a sound and competent independent state system.  At first blush, it appears that the plaintiff is correct, but closer inspection shows that the case cannot be abstained from.

In general, a district court may not abstain outside the specific strictures of the abstention doctrine, as annunciated by

9

the Supreme Court.  *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004).  Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The Supreme Court limited the use of the *Bruford* abstention to cases in which a federal court is sitting in equity.  In  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 729 (1996), the Supreme Court expanded the abstention doctrine a little to include all cases in which a federal court is asked to exercise its discretion.  The Fifth Circuit has interpreted that to mean that where there is an action for damages, federal abstention is not appropriate.  *See Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 704-05 (5th Cir. 1999).  In *Webb*, the Fifth Circuit noted that an action in which a federal court is not asked to weigh competing interests is not an action that is in its discretion.  Therefore abstention would be inappropriate.

 The same is true in this case.  The Court is not asked to weigh competing interests.  And the Court has no discretion to award damages or not, if the jury finds that the land is contaminated.

 Plaintiff also claims that the Act's provisions forcing agency hearing during the pendency of a case probably cannot be enforced after removal, however, it is unclear why that would be

10

so.  This court is bound to follow the substantive law of the state, and even its procedural law, when it affects substantive rights.  *Erie R.R. v. Thompkins*, 304 U.S. 64 (1938).  Such a rule allows this Court to enforce state procedural requirements related to medical malpractice, and it is not clear why this case is any different.  *See Zoblotsky v. Tenet Choices, Inc.*, No. 03-2957, 2007 WL 2008506 (E.D. La. July 6, 2007)(Barbier, J.); *Richardson v. Advanced Cardiovascular Sys.*, 865 F. Supp. 1210 (E.D. La. 1994).  In each of these cases, the federal court determined whether a plaintiff had complied with the procedures of the Louisiana Medical Malpractice Act.  Other Courts have held that even though compliance with Medical Malpractice schemes is procedural, it must be followed by a federal court sitting in diversity.  *Barber v. Edman,* 719 F.2d 122, 123 & n.5 (5th Cir. 1983)(*citing Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1168-69 (5th Cir. 1979)).  Regardless, this particular issue does not have to be decided by this Court at this particular time.

   The issue at hand is whether the Act requires a separate determination of liability and damages.  It appears that the purpose of the act is to ensure that damages actually be used to remediate the land.  The Act specifically does not prohibit additional damages.  Therefore there is nothing wrong with a jury determination of the amount of the damages.  Thereafter DNR will

decide (with the court's approval) how much of those damages are to be used for remediation.  The Louisiana Fourth Circuit has held that there is no need for a second jury for damages, and there is no reason for this Court to disagree.

Accordingly,

The Court reaffirms its earlier ruling that Defendant's Motion in Limine to Exclude Testimony and Evidence Regarding the Need for, Extent and Cost of Plaintiff's Proposed Remediation Plan (Rec. Doc. 54) is **DENIED.**

New Orleans, Louisiana this the 12th day of October, 2007.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE